supportable and therefore excuse his failure to file.

The judgment below is VACATED and REMANDED.

**H.G. ERWIN, Plaintiff-Appellant,**

v.

**Everett E. PRICE and the Mayor and Council of the City of Athens, Georgia, Defendants-Appellees.**

**No. 85–8064.**

United States Court of Appeals, Eleventh Circuit.

Dec. 16, 1985.

Albert M. Pearson, Athens, Ga., for plaintiff-appellant.

Andrew H. Marshall, Athens, Ga., for defendants-appellees.

Before VANCE and HENDERSON, Circuit Judges, and ALLGOOD\*, District Judge.

VANCE, Circuit Judge:

Former Athens, Georgia police officer H.G. Erwin appeals a decision of the district court for the middle district of Georgia upholding his termination for refusing to answer questions concerning an off-duty

---

\* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

gun-pointing incident. Because a public employee who is not required to waive his fifth amendment privilege against self-incrimination may properly be disciplined for refusing to answer questions narrowly and specifically related to official duty, we affirm.

## I.

While off duty on a Saturday afternoon Officer Erwin, after several drinks, got into an altercation at a package liquor store with a citizen named Arnold. When Erwin pulled his car up to the door of the store, Arnold allegedly yanked open the car door, called him an insulting name and accused him of running over his leg. Erwin reached into his glove compartment and ostentatiously pulled out his gun and showed it to Arnold to forestall any trouble. He told Arnold that if he had a complaint he should call the police and that Erwin would await their arrival. Arnold retreated across the street but continued to hurl epithets at Erwin. Erwin told police at the scene, and later testified in the court below, that he then pointed his finger at Arnold and pretended to shoot at him. This had the desired effect of sending Arnold scurrying. Arnold accused Erwin of actually pointing the gun, a criminal offense under Georgia law.

When Erwin arrived at work the following Tuesday he was handed a letter from police chief Price directing him to give a truthful and detailed statement about the incident to Major Winston Dill and afterwards to report for a polygraph test. The letter, and Major Dill independently, informed Erwin that the results of the examination would be used for departmental purposes only and that no information from it would be used in any criminal proceedings. Erwin replied that he understood but wanted his Miranda rights read. Dill refused because the warnings did not apply: nothing said there would be used in criminal proceedings. The record shows that Erwin received at least three other assurances that he was not being asked to waive his fifth amendment privilege and that nothing

stated during the investigation could be used against him in a criminal proceeding. He also was familiar with Athens Police Department Special Order 79–089–09 and General Order 78-4 which in substance state that police officers must answer questions narrowly related to their official duties, that answers will not be used in any subsequent criminal investigation and that refusal to testify will be considered insubordination subject to discipline including dismissal. Despite these assurances Erwin repeatedly refused to answer directly whether he pointed his gun and said he would make no comments on the gun-pointing incident until the matter was heard in court. He repeated this refusal in a note to Chief Price.

Erwin was then suspended and ultimately dismissed for insubordination for refusing to respond to questions during the administrative investigation. Erwin filed suit in district court claiming that he was protected by the fifth amendment privilege against self-incrimination from having to answer what he considered to be unlawful questions. The district court held that Erwin had no fifth amendment right to refuse to answer questions narrowly and specifically directed to his official duties and upheld his firing.

## II.

It is settled that the fifth amendment privilege against self-incrimination permits a person "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973). He may refuse "unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant." *Id.* at 78, 94 S.Ct. at 322. A public employee may not be coerced into surrendering the privilege by threat of sanctions, *Lefkowitz v. Cunningham*, 431 U.S. 801, 805, 97 S.Ct. 2132, 2135, 53

L.Ed.2d 1 (1977), and if he has been coerced into waiving the privilege, his answers are not admissible against him in a subsequent criminal trial. *Garrity v. New Jersey,* 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562 (1967). However, if he has not been required to waive this protection, but has refused to answer questions "specifically, directly, and narrowly relating to the performance of his official duties," the privilege would not be a bar to dismissal. *Gardner v. Broderick,* 392 U.S. 273, 278, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082 (1968).

We have held that the privilege against self-incrimination thus "affords a form of use immunity which, absent waiver, *automatically* attaches to compelled incriminating statements *as a matter of law.*" *Hester v. City of Milledgeville,* 777 F.2d 1492, 1496 (11th Cir.1985) (emphasis added). Plaintiff concedes that the questions at issue here were properly related to his duties and that he was assured that he was not being asked to waive his constitutional privilege. He contends, however, that he is entitled to a statutory grant of use immunity[1] or a binding agreement from the district attorney not to use his statements in a criminal prosecution. He argues that without such a grant courts may ignore the many assurances given by his superiors and admit the statements. He also claims that he will unfairly have to bear the risk of persuading the court in a voluntariness hearing that by making his statement he did not waive his privilege. The logic of our holding in *Hester* leads us to hold that where there is a formal disciplinary investigation during which a public

employee is ordered to answer proper questions under threat of dismissal, coercion is presumed and the government bears the burden of demonstrating voluntariness. *See Hester v. City of Milledgeville,* 777 F.2d 1492, 1495–96 (11th Cir.1985). Therefore, "any grant of use immunity to the plaintiff[ ] would have been duplicative." *Hester v. City of Milledgeville,* 777 F.2d 1492, 1496 (11th Cir.1985).[2] Erwin could, therefore, lawfully be disciplined for his refusal to answer the questions posed to him.

AFFIRMED.

1. There is no Georgia statute permitting such a grant in this situation. The closest statute requires there to be a pending criminal prosecution. Ga.Code § 24–9–28.

2. Plaintiff also argues that language in *Kastigar v. United States,* 406 U.S. 441, 461–62, 92 S.Ct. 1653, 1665–66, 32 L.Ed.2d 212 (1972), detailing advantages that a prior grant of use immunity may have over a subsequent fifth amendment suppression hearing, entitles him to such a grant. *Kastigar* is inapposite because the Court there was not constitutionally requiring use immunity but was using these advantages to show that a use immunity statute did not violate the

fifth amendment. Plaintiff invites us either to have the city forestall disciplinary procedures until after a court determination of fifth amendment claims or to require the city to reinstate Erwin with two years back pay to give him another chance to answer the city's question. For reasons of administrative efficiency parallel to those of judicial efficiency in *Maness v. Meyers,* 419 U.S. 449, 460–61, 95 S.Ct. 584, 592–93, 42 L.Ed.2d 574 (1975), we refuse the invitation and leave the risk that a constitutional objection to answering questions will prove insufficient upon the person making the objection.