John L. Carroll, Associate Professor of Law, Walter F. George School of Law, Mercer University, Macon, Ga., for plaintiffs-appellants.

N. Gunter Guy, Jr., George B. Azar, Montgomery, Ala., for defendants-appellees.

Before KRAVITCH and HATCHETT, Circuit Judges, and MORGAN, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

This appeal presents the question of whether two police officers were dismissed for a proper invocation of their fifth amendment rights against self-incrimination or for improperly refusing to answer questions narrowly tailored and specifically directed to the performance of their duties. Lonnie Benjamin and Harold Hicken, both veteran officers of the Montgomery, Alabama Police Department, filed a section 1983 action challenging their dismissal from the force. After a bench trial, the district court entered judgment for the defendants. Under the unusual facts of this case, we hold that the dismissals of the

**Lonnie BENJAMIN and Harold Hicken, Plaintiffs-Appellants,**

v.

**The CITY OF MONTGOMERY, et al., Defendants-Appellees.**

No. 85–7135.

United States Court of Appeals, Eleventh Circuit.

April 2, 1986.

officers violated their fifth amendment rights.

The facts as developed at trial and set forth in the district court's order are basically undisputed. The dismissal grew out of the "Todd Road incident," which apparently caused some stir in Montgomery. The incident involved an assault upon two Montgomery police officers, in which one officer was shot. Several persons were indicted in connection with the incident. The defendants in those cases, seeking to show police misconduct during the incident and the subsequent investigation, sought the testimony of officers Benjamin and Hicken concerning their investigation of the incident.

On October 6, 1983, defendants in the Todd Road case subpoenaed Benjamin and Hicken to testify at preliminary hearings in the circuit court of Montgomery County. Both officers refused to answer questions about their investigation of the incident, citing their right against self-incrimination. The next day, the Mayor of Montgomery, Emory Folmar, ordered the officers to report to the District Attorney and divulge all information relevant to the case. The District Attorney, however, declined to interview the officers, citing the fact that the officers would obtain immunity against use of the statements. The plaintiffs then were placed on administrative leave with pay.

On November 21, the appellants were subpoenaed to testify at the trial of Worrie Taylor, one of the Todd Road defendants. Hicken took the stand and again refused to answer questions about the investigation of the incident. He indicated he would only answer questions from the District Attorney. The trial court judge then called Mayor Folmar to the stand. While on the stand, Mayor Folmar withdrew his order of October 7. He stated that:

> If this Honorable Court calls Sergeant Benjamin or Sergeant Hicken to this stand and they do not tell everything they know about this case to the best of their ability and the full truth, I will fire them right this minute.

The appellants were not recalled that day.

On November 23, the appellants were recalled to the stand. Upon inquiry by the court, both indicated a willingness to testify, but only because the Mayor had ordered them to testify. For some reason, the court refused to accept their testimony. The court then recalled Mayor Folmar to the stand, and suggested that the Mayor fire the officers, apparently under the misconception that they would then testify. The court called a recess, during which Mayor Folmar informed the appellants that their employment was terminated. The appellants were then recalled to the stand, and again they refused to answer questions.

In ruling on the officers' section 1983 action, the federal district court held that the state's right to obtain testimony from police officers outweighed the officers' fifth amendment rights. As discussed below, the district court's ruling is contrary to established Supreme Court precedent that a governmental unit may not require public employees, even police officers, to waive their fifth amendment right against self-incrimination.

The watershed case in the area is *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). In *Garrity*, former police officers were convicted of obstruction of justice in connection with the fixing of traffic tickets. The officers had been questioned about the charges by the attorney general. They were warned that their answers might be used against them, and that they could refuse to answer, but that if they did so they would be dismissed. 385 U.S. at 495, 87 S.Ct. at 617. The officers answered; over their objection, the answers they gave were used against them in criminal prosecutions. The Supreme Court held that the statements had been coerced from the officers by the threat of dismissal, and therefore reversed the convictions. In *Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968), a police officer was called before a

grand jury investigating police corruption. He was advised of his right against self-incrimination, but told that if he refused to sign a waiver of immunity, he would be dismissed pursuant to a state law which required dismissal of any public employee who invoked the fifth amendment in connection with an investigation of the employee's official duties. He refused to sign, and was discharged for so refusing. The Supreme Court held that the officer "was discharged from office, not for failure to answer relevant questions about his official duties, but for refusal to waive a constitutional right." 392 U.S. at 278, 88 S.Ct. at 1916. Accordingly, the officer was entitled to reinstatement. In a companion case, *Uniformed Sanitation Men Assoc. v. Commissioner of Sanitation*, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968), the Court stated:

> ... if New York had demanded that petitioners answer questions specifically, directly, and narrowly relating to the performance of their official duties on pain of dismissal from public employment without requiring relinquishment of the benefits of the constitutional privilege, and if they had refused to do so, this case would be entirely different.

392 U.S. at 284, 88 S.Ct. at 1920.

This Circuit recently decided two cases which raised questions concerning the meaning of the line of Supreme Court cases discussed above. *See Hester v. City of Milledgeville*, 777 F.2d 1492 (11th Cir. 1985); *Erwin v. Price*, 778 F.2d 668 (11th Cir.1985). Both cases turned on whether the public employee involved had been required to waive fifth amendment protection. The *Erwin* case involved dismissal of a police officer. During an internal police department investigation, Erwin refused to answer questions about an off-duty incident in which he allegedly brandished his gun in an improper manner. The internal investigator repeatedly assured the officer that his responses would not be used in any criminal proceedings. Moreover, the officer was aware of standing department orders

which in substance state that police officers must answer questions narrowly related to their official duties, that answers will not be used in any subsequent criminal investigation and that refusal to testify will be considered insubordination subject to discipline including dismissal. *Id.* at 669.

Erwin contended that because he was not afforded a statutory grant of immunity before being required to answer, he had been required to either waive his fifth amendment protection or lose his position. The panel, however, held that a public employee in Erwin's position would automatically obtain *Garrity*-type immunity; thus no grant of statutory use immunity was necessary. The panel explained

> that where there is a formal disciplinary investigation during which a public employee is ordered to answer proper questions under threat of dismissal, coercion is presumed and the government bears the burden of demonstrating voluntariness. Therefore, "any grant of use immunity to the plaintiff[] would have been duplicative."

*Id.* at 670 (quoting *Hester*, 777 F.2d at 1496).

The appellees contend that Officers Benjamin and Hicken were in the same position as the officer in *Erwin*. They argue that Benjamin and Hicken's testimony in the trial of Taylor would have been compelled, that *Garrity*-type immunity would therefore have attached to the testimony, and accordingly the officers would not have waived their fifth amendment right against incrimination had they answered the questions. We disagree. The first time the officers were called, neither the mayor nor any police official had ordered them, upon pain of dismissal, to testify. Nor had they received any assurances that their testimony would not be used against them.

Appellees argue that police officers have a duty to testify in court, and that the City of Montgomery considers this to be a condition of their employment. The appellees attempted to establish this in the district court in their cross-examination of Benja-

min and Hicken. Obviously, it is generally expected that police officers will testify in court. This general expectation, however, does not rise to the level of coercion. Appellees cited nothing in the Montgomery Police Department regulations which specifically requires officers to testify in court at the request of criminal defendants.[1] Indeed, the appellees' position is curious, for it would allow criminal defendants to provide police officers with use immunity whenever they called the officers as witnesses, thus transferring control of *Garrity*-type use immunity from police officials to counsel for criminal defendants. Moreover, appellees' position would allow criminal defendants to wield the tool of use immunity, normally denied to defendants. *See, e.g., United States v. Thevis*, 665 F.2d 616, 638–41 (5th Cir. Unit B), *cert. denied*, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982). In sum, at the time they first were called to the stand, appellants were not the subject of any disciplinary proceeding, and had not been directed to answer questions on pain of dismissal. Had they testified, their answers would not have been coerced, and could later have been used against them.

Even assuming that a court might find coercion in this situation, we cannot require public employees to speculate whether their statements will later be excluded under *Garrity*. *See Gardner v. Broderick*, 392 U.S. 273, 279, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082 (1968) ("Petitioner could not have assumed—*and certainly he was not required to assume*—that he was being asked to do an idle act of no legal effect.") (emphasis added).

Once the Mayor ordered the officers to testify the situation changed. They were then under coercion to testify. They were recalled to the stand, and expressed a willingness to testify. They indicated to the court, however, that they were only willing to testify because of the coercion; in other words they were testifying on the condition that they receive *Garrity*-type immunity and thereby preserve their fifth amendment rights. For some reason, the state court refused to accept this testimony. The transcript of the state court proceeding clearly establishes that the Mayor discharged the appellants because they agreed to testify only under this condition. Moreover the Mayor's testimony in the federal district court confirms this:

Q: If, in fact, Sergeants Benjamin and Hicken said that they were ready to testify, would you have fired them if you had known that fact?

A: If they were ready to testify *openly and freely*, no, I would not.

Q: Now, the question that was asked of you is, would you have fired them if you knew they were willing and ready to testify. And I believe your answer was that if they were willing to testify truthfully and fully and freely you would not have fired them?

A: That is correct.

Q: Do you know if, in fact, they were ever willing to testify in that manner?

A: The information I received, that everything they said was qualified. That everything *they put a condition onto it* and that the district attorney refused to take their testimony and *the judge refused to take their testimony on the conditions they attached to it*.

Q: And that was the condition that they attached … And you wanted them to testify without these conditions attached?

A: My thing was that they had a duty and responsibility, been paid by the public to do certain things according

1. The appellees rely on two provisions in the department regulations. The provisions forbid officers from "engaging in any act that a reasonable person would view as an obstruction of justice," or interfering with the criminal justice system. Neither of these provisions come any-

where near the standards set forth in *Garrity* and *Erwin*. Accordingly, we need not consider whether a police officer could be coerced simply by the existence of police department regulations.

to the conditions of their employment. They were supposed to testify and tell what they knew about the case. They did not do that. That was the information the judge gave me, or he wouldn't have sent for me. And that is why I came and that is why I ultimately fired them.

(Emphasis added). This testimony establishes that the appellants were terminated solely because they conditioned their testimony on retention of their fifth amendment rights: "not for failure to answer relevant questions about [their] official duties, but for refusal to waive a constitutional right." *Gardner v. Broderick*, 392 U.S. 273, 278, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082 (1968). Under the law, a public employee cannot be terminated for refusing to waive fifth amendment rights. *Id.* Accordingly, the judgment of the district court is REVERSED and the case REMANDED for the determination of appropriate relief.