872 F.2d 1026
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MICHIGAN STATE POLICE TROOPERS ASSOCIATION, INC., Tpr.
Michael O'grady, Tpr. Charles Morehead,
Plaintiffs-Appellants,
City of Detroit Police Department, Intervening Plaintiff,
v.
Gerald L. HOUGH, Ritchie T. Davis, Defendants-Appellees.
 No. 88-1663.
 United States Court of Appeals, Sixth Circuit.
 April 11, 1989.
 
 Before KRUPANSKY and DAVID A. NELSON, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The individual plaintiffs are two state police officers who were involved in unrelated acts of off-duty misconduct. Upon pain of dismissal, the officers were ordered to submit to questioning about the incidents. The officers did so, under protest, and disciplinary proceedings followed. The officers and their union then brought this Sec. 1983 action. They ask the court for injunctive relief, including an injunction against any use being made of the officers' statements. The district court (Douglas W. Hillman, J.) entered summary judgment for the defendants, and the plaintiffs have appealed.
 
 
 2
 * Charles Morehead and Michael O'Grady are both Michigan state troopers. Trooper Morehead has admitted that he stabbed a man outside a bar on January 17, 1987. Trooper O'Grady has admitted that on May 27, 1987, he drank 10 or 12 beers at a bar, drove to a park in his pickup truck, and shot 8 to 10 rounds into the air from his 9mm pistol.
 
 
 3
 Each trooper was ordered to answer questions about the incident in which he had been involved. In Trooper Morehead's case, the authority cited was Official Order No. 1, section 2.8:
 
 
 4
 "Members of the department who have been given a direct order by a superior authority to respond to specific questions which pertain to job related matters or to their conduct which is under investigation by the department are required to truthfully answer such questions. Where no criminal prosecution is probable, no such orders shall be given without approval of the Director [of the Michigan Department of State Police]."
 
 
 5
 The order also provides for the manner of questioning:
 
 
 6
 "An investigator designated by the Director to investigate complaints against members of the department shall have the authority of the Director to order departmental members to answer all questions specifically directed and narrowly related to the allegation or complaint."
 
 
 7
 Trooper O'Grady was questioned under the authority of Article 34 of the department's amended Code of Conduct:
 
 
 8
 "Employees shall fully and truthfully answer questions pertaining to their work performance or on-duty conduct which is under investigation when ordered to do so by a supervisor. Employees shall also fully and truthfully answer questions pertaining to off-duty conduct when a supervisor has reasonable grounds to believe that such conduct may involve violation of criminal law or improper use of department materials, supplies, or property. This provision does not abrogate rights existing under law or collective bargaining Agreement. Employees are subject to discipline, including discharge, for refusing to answer questions under this article, when advised that answers will not be used in a subsequent criminal proceeding and that refusal to answer will be considered insubordination."
 
 
 9
 Article 7, section 10 of the collective bargaining agreement between the department and the union also addresses this situation:
 
 
 10
 "If the matter under investigation could lead to criminal charges, but the departmental inquiry is not directed at obtaining inculpatory statements to be utilized in criminal proceedings, but is merely for the purpose of determining the employee's continued status with the department, the employee shall be advised of the Garrity rule, which provides that the employee's constitutional rights prohibit coerced statements obtained under threat of discharge from use in subsequent criminal proceedings against him/her. If the Employer advises the employee that such statements given will not be used against him/her in any subsequent criminal proceedings, the employee shall also be advised that:
 
 
 11
 a. The employee has the right to counsel or Association representation during questioning;
 
 
 12
 b. The presence of counsel or an Association representative will in no way, in and of itself, jeopardize his/her continued employment;
 
 
 13
 c. The employee is required to fully and truthfully answer the questions or be subject to discharge."
 
 
 14
 Both troopers appeared at the times appointed for their questioning and read statements into the record explaining that they would answer the questions only under protest. Each proceeded to answer detailed, factual questions about the incident in question.
 
 
 15
 Trooper Morehead was suspended from his job without pay on March 31, 1987. As of September of 1987 no use had been made of his statement in state criminal proceedings or in the department's internal disciplinary proceedings. (The department's disciplinary proceedings had been held in abeyance pending the disposition of the criminal charges.) As of September of 1987 Trooper O'Grady was still on duty and receiving full pay. No use had been made of his statement either. His internal disciplinary proceedings were also being held in abeyance.
 
 
 16
 The union filed a complaint in federal district court on September 5, 1985, seeking (1) a declaratory judgment that Official Order No. 1 and the department's Code of Conduct were unconstitutional on their face and (2) an injunction prohibiting their enforcement. About two years later the current version of the complaint was filed, alleging specifically that application of the Code of Conduct and Official Order No. 1 to Troopers Morehead and O'Grady was unconstitutional. The amended complaint also alleged (as had the original complaint) that the enforcement of the Code of Conduct and Official Order No. 1 against any police officer would be unconstitutional.
 
 
 17
 Cross-motions for summary judgment were filed. The district court granted the defendants' motion, holding that as long as the plaintiff troopers had been advised that their answers could not be used against them in criminal proceedings, they could be compelled, under threat of discharge, to answer specific questions about off-duty criminal conduct. The district court rejected a number of rather vague arguments raised by the plaintiffs, including an argument that the plaintiffs' due process rights were violated, the argument that they had a constitutional right of privacy that exempted them from the duty to answer questions about their behavior, an argument that they were the victims of an unconstitutional search or seizure, and an argument that their First Amendment rights of freedom of association had been infringed. The district court also declined to exercise its discretion to grant injunctive or declaratory relief with respect to the union's more wide-ranging claims.
 
 II
 
 18
 In Gardner v. Broderick, 392 U.S. 273 (1968), the Supreme Court held that a police officer could not be discharged for invoking his Fifth Amendment privilege against self-incrimination when subpoenaed to testify before a grand jury. The Court also declared that a police officer could be discharged for failure to answer questions, under some circumstances, if promised immunity from the use of his answers in any subsequent criminal prosecution:
 
 
 19
 "If appellant, a policeman, had refused questions specifically, directly, and narrowly relating to the performance of his official duties, without being required to waive his immunity with respect to the use of answers or the fruits thereof in a criminal prosecution of himself, the privilege against self-incrimination would not have been a bar to his dismissal."
 
 
 20
 Id. at 278 (footnote and citation omitted). The Supreme Court has applied the same principle to garbagemen, Uniformed Sanitation Men Association v. Commissioner of Sanitation, 392 U.S. 280 (1968), public contractors, Lefkowitz v. Turley, 414 U.S. 70 (1973), and political party officials, Lefkowitz v. Cunningham, 431 U.S. 801 (1977).
 
 
 21
 Other courts have addressed this issue have drawn a sharp line between off-duty criminal acts and other kinds of off-duty activities. The Court of Appeals for the Eleventh Circuit, for example, in a case similar to the case at bar, decided that the state could require a police officer to answer questions about an incident in which the officer had allegedly pointed a gun at a citizen while off duty. Erwin v. Price, 778 F.2d 668 (11th Cir.1985). The First Circuit has approved wide-ranging, routine questioning of police officers regarding their financial affairs, on the theory that questions designed to ferret out corruption are specifically, directly, and narrowly related to performance of official duties. O'Brien v. DiGrazia, 544 F.2d 543, 546 (1st Cir.1976), cert. denied, 431 U.S. 914 (1977). On the other hand, courts have sometimes held that police officers may not be fired for refusing to answer questions about off-duty personal conduct less closely related to job performance, such as sexual indiscretions. See Shuman v. City of Philadelphia, 470 F.Supp. 449 (E.D.Pa.1979) (officer refused to answer detailed questions about his sexual activities); cf. Briggs v. North Muskegon Police Department, 653 F.Supp. 585, 590 (E.D.Mich.1983) (married officer's cohabitation with woman not his wife did not adversely affect officer's ability to perform his job), aff'd without opinion, 746 F.2d 1475 (6th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 3535 (1985).
 
 
 22
 We think the district court properly concluded that the questions about the troopers' off-duty conduct in this case were "specifically, directly, and narrowly relat[ed] to the performance of [the troopers'] official duties." The questions were not asked to harass the officers or to pry into their private lives improperly. The questions all pertained to specific allegations of criminal misconduct. We reject the notion that a policeman can fight crime by day and commit crime by night with no cost to his effectiveness as a policeman. As the district court's opinion correctly points out, criminal conduct by police officers--whenever it occurs--tends to reduce public trust in the police. It draws their judgment into serious question, and it opens up the officers to the possibility of impeachment when they appear in court as witnesses. The state has an obvious and legitimate interest in a law-abiding police force, and the questioning of the troopers here was in furtherance of that interest.
 
 
 23
 We view the plaintiffs' remaining arguments as little more than attempts to reformulate the principal issue. We believe that the district court properly rejected these arguments. If the union was a proper party (a question we need not decide), there was no abuse of discretion in denying the union's more wide-ranging requests for injunctive and declaratory relief. The judgment of the district court is AFFIRMED.