# United States Court of Appeals
## For the First Circuit

No. 02-1493

ROBERT A. DWAN; CATHERINE M. DWAN; ALLYSON M. DWAN,
BY HER PARENTS AND NATURAL GUARDIANS, ROBERT A. DWAN
AND CATHERINE M. DWAN; BRITTANY C.M. DWAN, BY HER PARENTS
AND NATURAL GUARDIANS, ROBERT A. DWAN AND CATHERINE M. DWAN;
MADYSON E. DWAN, BY HER PARENTS AND NATURAL GUARDIANS,
ROBERT A. DWAN AND CATHERINE M. DWAN; ROBERT A. DWAN, JR., BY HIS
PARENTS AND NATURAL GUARDIANS, ROBERT A. DWAN AND CATHERINE M.
DWAN; CHRISTOPHER J. DWAN, BY HIS PARENTS AND
NATURAL GUARDIANS, ROBERT A. DWAN AND CATHERINE M. DWAN,

Plaintiffs, Appellees,

v.

CITY OF BOSTON,

Defendant.

_____

PAUL F. EVANS, INDIVIDUALLY AND AS THE POLICE COMMISSIONER
FOR THE BOSTON POLICE DEPARTMENT; THOMAS DOWD, INDIVIDUALLY
AND AS AN EMPLOYEE OF THE CITY OF BOSTON POLICE DEPARTMENT,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before
Boudin, Chief Judge,
Farris,[*] Senior Circuit Judge,
and Torruella, Circuit Judge.

_____

[*]Of the Ninth Circuit, sitting by designation.

Steven P. Perlmutter with whom Michael D. Lurie, Elizabeth C. Sackett and Robinson & Cole LLP were on brief for appellants.

Stephen J. Delamere with whom Bruce A. Bierhans and Law Offices of Bruce A. Bierhans, LLC were on brief for appellees.

May 27, 2003

**BOUDIN, Chief Judge**. Robert Dwan sued the City of Boston and two superior officers in the Boston Police Department ("Department"), claiming that the defendants violated his Fifth Amendment rights by putting him on paid administrative leave after he refused to testify before a grand jury concerning the vicious beating of another police officer. The district court rejected the officers' claim of qualified immunity, and the officers have appealed. We conclude that Dwan's superiors do have qualified immunity.

This case is an offshoot of the 1995 assault of Boston police officer Michael Cox, described in detail in United States v. Conley, 249 F.3d 38, 40-43 (1st Cir. 2001), and United States v. Conley, 186 F.3d 7, 11-15 (1st Cir. 1999), cert. denied 529 U.S. 1017 (2000). As to the events involving Dwan, we recount the facts in the light most favorable to Dwan as the party opposing summary judgment. N. Am. Specialty Ins. Co. v. Lapalme, 258 F.3d 35, 36 (1st Cir. 2001).

Robert Dwan joined the Boston Police Department in 1989 as an officer; he has been a sergeant since 1997. On the evening of January 25, 1995, Dwan was on patrol with his partner Kenneth Conley. A broadcast over the police radio reported a robbery at a Boston nightclub and, mistakenly, that a police officer had been shot. Several police cars pursued the suspects. The chase ended at a cul de sac where the suspects ran from their car and were

chased on foot. One of the first officers on the scene was Michael Cox, an African-American undercover officer dressed in plainclothes. Dwan and Conley arrived in the fifth car on the scene. Cox pursued one of the suspects to a fence at one end of the cul de sac. The suspect climbed over the fence, but as Cox started to climb after him, he was pulled down by unidentified police officers and beaten severely.

The Department immediately launched an investigation into the Cox beating. Dwan initially cooperated, filing a report in March 1995, describing his actions on the night in question and claiming that he did not see which officers assaulted Michael Cox because he (Dwan) was at the other end of the cul de sac assisting in the arrest of another suspect. Officer Joseph Horton corroborated Dwan's story, stating that he (Horton) assisted in the arrest and saw Dwan assisting as well. An Internal Affairs officer expressed himself satisfied.

Nevertheless, the Department continued to question Dwan. This was partly because no officer ever admitted to beating Cox or seeing anyone else do so, but also because Dwan's version of events was at odds with other evidence. A security guard who was in Michael Cox's car stated that he was present when the second suspect was arrested and that no one fitting Dwan's description assisted in the arrest. In addition, Officer Richard Walker testified that he

saw two officers matching Conley and Dwan's descriptions not far from where Cox was beaten.

In May 1997, Dwan was called before a federal grand jury investigating the Cox beating as a potential civil rights violation. Dwan was not given immunity in this proceeding and refused to testify, invoking his Fifth Amendment right against self-incrimination. He was again subpoenaed to testify before the grand jury in October 1998. His attorney told the prosecutor that Dwan would again invoke the Fifth Amendment if he was not given immunity, and the prosecutor withdrew the subpoena.

Eight days later, on October 28, 1998, Dwan was placed on administrative leave with pay. Police Commissioner Paul Evans said in a letter that the decision had been made for "the efficiency of the Department" and should not be considered disciplinary action. In January 1999, the Department charged Dwan with violating regulations in numerous respects (e.g., filing a false report) in regard to the Cox beating. The Department scheduled four hearings over the next year regarding these charges, but cancelled all of them, and the complaint was ultimately abandoned.

Dwan remained on administrative leave for eighteen months (October 1998-March 2000). While on leave, he was paid his regular salary but could not work overtime or special assignments; Dwan claims that the forgone income totaled between 50 and 100 percent of his base salary. He was reinstated in March 2000 after passing

the second of two polygraph examinations indicating that he did not participate in the Cox beating and did not see who did participate. Since his reinstatement, Dwan alleges that the Department has denied his requests to work special assignments and to be transferred to another district.

On March 12, 2001, Dwan brought suit for damages in federal court against the Department, Police Commissioner Evans, and Deputy Superintendent Thomas Dowd (who oversaw the Cox investigation).[1] In pertinent part, Dwan's complaint alleged that the defendants violated 42 U.S.C. § 1985 (2000), his First, Fifth, and Fourteenth Amendment rights, which are subject to redress under 42 U.S.C. § 1983 (2000), and the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §11I (2000). His wife and children also sued the defendants for loss of consortium. Mass. Gen. Laws ch. 258, § 2 (2000).

The defendants moved for summary judgment, which the district court granted on all counts except Dwan's Fifth Amendment claim and the claim under the Massachusetts Civil Rights Act, which depends on the Fifth Amendment claim. As to this claim, the district court held that taking all factual inferences in favor of Dwan, "a reasonable jury could conclude that his right against self-

---

[1]The City of Boston was substituted for the Department because the Department is not a suable entity. The city could under certain circumstances be liable for a violation of Dwan's rights by Evans and Dowd. Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978).

incrimination was wrongfully burdened by the defendants' actions" which could constitute "a scheme of harassment designed to chill his Fifth Amendment rights and to coerce Dwan into incriminating himself."  The court also held that Dwan's Fifth Amendment rights were "clearly established" so qualified immunity was unavailable.

The individual defendants have appealed from the order denying qualified immunity.  An interlocutory appeal lies from such a denial, Mitchell v. Forsyth, 472 U.S. 511, 530 (1985), at least "to the extent that the qualified immunity defense turns upon a 'purely legal' question." Fletcher v. Town of Clinton, 196 F.3d 41, 45 (1st Cir. 1999).  In such an instance, our review is, of course, de novo.  Suboh v. Dist. Attorney's Office, 298 F.3d 81, 90 (1st Cir. 2002).  If qualified immunity is denied because the district court finds a disputed issue of fact reserved for trial, interlocutory review as to that ruling is not available.  Diaz v. Martinez, 112 F.3d 1, 3 (1st Cir. 1997).

Under well-established law, the individual defendants are entitled to qualified immunity for official action unless (1) their conduct violated Dwan's constitutional rights and, in addition, (2) the law to this effect was "clearly established" under then-existing law so that a reasonable police officer would have known that his behavior was unlawful.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Saucier contemplates, although with possible exceptions not pertinent here, see Dirrane v. Brookline Police Dep't, 315 F.3d 65,

69-70 (1st Cir. 2002), that the reviewing court should begin with the former question.

The inquiry is simplified, but only partly, by the defendants' concession (for purposes of this appeal) that Dwan was placed on administrative leave "because" he pleaded or threatened to plead the Fifth Amendment before the federal grand jury. This concession confirms what would otherwise have been a plausible but not inevitable inference from the timing of events: that the administrative leave decision was prompted at least in part by Dwan's action in taking the Fifth Amendment and not solely by an unrelated determination that he should be investigated internally for misconduct.

In a set of decisions in the late 1960s and in the 1970s, the Supreme Court held that public employees could not be coerced into waiving their Fifth Amendment rights.[2] Most of the cases involved public employees who were fired or otherwise penalized for pleading the Fifth Amendment after being advised that this action would automatically result in such penalty. Although the Supreme Court has not recently revisited the Garrity line of cases, a number of the circuits including this one have focused on the "coercion"

---

[2]Lefkowitz v. Cunningham, 431 U.S. 801 (1977); Uniformed Sanitation Men Ass'n, Inc. v. Comm'r of Sanitation, 392 U.S. 280 (1968); Gardner v. Broderick, 392 U.S. 273 (1968); Garrity v. New Jersey, 385 U.S. 493 (1967).

-8-

issue emphasized by the Court in those cases, making it a claim dependent on such a showing.[3]

Further, this circuit has held that <u>coercion</u> is lacking so long as the employee was never threatened or forewarned of any sanction for refusing to testify, even though the employee suffers adverse action after-the-fact as a result of refusing to cooperate. <u>See</u> <u>Singer</u>, 49 F.3d at 847 (1st Cir. 1995); <u>Indorato</u>, 628 F.2d at 715-16. Here, no one told Dwan that if he pled the Fifth Amendment before the grand jury, he would be placed on administrative leave. Nor does he allege any regulation or settled practice to that effect. <u>United States</u> v. <u>Friedrick</u>, 842 F.2d 382, 395 (D.C. Cir. 1988).

There are dicta--although perhaps no holdings--in a few circuits that assume that official retaliation against someone for pleading the Fifth Amendment could be a violation even without coercion to compel a waiver. <u>See</u> <u>Nat'l Treasury Employees Union</u> v. <u>U.S. Dep't of Treasury</u>, 25 F.3d 237, 241-42 (5th Cir. 1994). Rights are often safeguarded in this fashion, <u>Dirrane</u>, 315 F.3d at 69 (First Amendment); <u>Gu</u> v. <u>Boston Police Dep't</u>, 312 F.3d 6, 13-14 (1st Cir. 2002) (Title VII), although much depends upon how the "right"

---

[3]<u>See, e.g.</u>, <u>Singer</u> v. <u>Maine</u>, 49 F.3d 837, 847 (1st Cir. 1995); <u>United States</u> v. <u>Indorato</u>, 628 F.2d 711 (1st Cir.), <u>cert. denied</u>, 449 U.S. 1016 (1980); <u>Chan</u> v. <u>Wodnicki</u>, 123 F.3d 1005, 1009-10 (7th Cir. 1997), <u>cert. denied</u>, 522 U.S. 1117 (1998); <u>Benjamin</u> v. <u>City of Montgomery</u>, 785 F.2d 959, 961-62 (11th Cir.), <u>cert. denied</u>, 479 U.S. 984 (1986).

is defined, since rights do not come in pre-defined shapes and sizes.

How the Supreme Court would react to such a case--where there are consequences but no coercion--is uncertain. Fifth Amendment law has outgrown its historical roots, Amar & Lettow, Fifth Amendment First Principles: The Self-Incrimination Clause, 93 Mich. L. Rev. 857 (1995), and the Court has not been quite so hospitable recently to expanding rights. But we will assume arguendo that in some circumstances a Fifth Amendment claim might be made out based solely on after-the-fact consequences of taking the Fifth Amendment.

Yet it cannot sensibly be the law that administrative measures, although taken in part "because" an employee pled the Fifth Amendment, are automatically impermissible. Under the case law, a negative inference may be drawn by a public employer--and adverse action taken--"because of" an employee's refusal to answer questions about job-related misconduct, so long as the inference is plausible and (perhaps) other information also supports the adverse action. See Baxter v. Palmigiano, 425 U.S. 308, 317-18 (1976). Compare Lefkowitz, 431 U.S. at 808 n.5. Circuit case law is in accord. See United States v. Stein, 233 F.3d 6, 14-17 (1st Cir. 2000), cert. denied 532 U.S. 943 (2001).

Like all "abstract" rights, Garrity has its limitations. Suppose large sums are missing from the cash drawer in the state

treasury but the cashier declines to discuss the matter with investigators or a grand jury; surely it would not be a civil rights violation to put the cashier on paid administrative leave pending investigation merely because the cashier would forego overtime pay. Cf. Chan, 123 F.3d at 1009-10; Fraternal Order of Police v. Philadelphia, 859 F.2d 276, 282-83 (3rd Cir. 1988). We are concerned (as usual) with reasonableness, context, degree and fit. See, e.g., Dirrane, 315 F.3d at 70-71.

An objective standard serves best in this context. The closest analogy is to the objective standard of probable cause or reasonable suspicion used under the Fourth Amendment. E.g., Whren v. United States, 517 U.S. 806 (1996). Precedent aside, there are practical reasons why, in cases like this one, the test should be objective. Once we know or assume arguendo that the refusal to testify played some role in the Department's decision--absent that there would be no causation--efforts to disentangle the threads further are almost hopeless. Cf. Dirrane, 315 F.3d at 69; Barry Wright Corp. v. ITT Grinnell Corp., 724 F.2d 227, 232 (1st Cir. 1983).

Given the objective circumstances of this case, we see nothing unreasonable about the actions taken by the defendants. It is beyond dispute in this case that unidentified policemen on the scene badly beat a black undercover police officer, mistakenly believing him to have shot another policeman, and it is almost

-11-

certain that some of the other officers present knew who had done it, denied having knowledge, and supported each other's stories. The individual defendants, to their credit, were trying to penetrate this familiar wall of silence and bring the wrongdoers to justice.

Dwan may or may not have had such knowledge. But what the defendants knew was that he had told a story as to why he did not see what happened, admittedly supported by one of Dwan's fellow officers but contradicted in substance by two others (who had no obvious motive to lie), and Dwan then declined to testify about the matter before a grand jury without immunity. On this basis, the defendants were perfectly entitled to begin an investigation into whether Dwan's original claims constituted false reporting and other violations of departmental regulations.

Nor was there anything unreasonable in placing him on administrative leave with pay pending this investigation even though this meant he was not eligible for extra duty which would have meant more pay. Administrative leave, for one reasonably suspected of serious misconduct, is a routine measure--here mitigated by continued pay. That Dwan suffered some disadvantage--as does any innocent citizen who is lawfully but mistakenly arrested--does not make it a constitutional violation.

Dwan offers several further arguments in support of his charge of a Fifth Amendment violation. One such claim, that the defendants knew or should have known that he was innocent of

wrongdoing, rests solely on the fact that one colleague supported his story. But two other officers contradicted Dwan and he had declined to testify before the grand jury. The objective facts show that the defendants had a reasonable basis to be suspicious of Dwan's claim, for beginning an investigation, and for side-lining him for a period of investigation.

Dwan also argues that the defendants' purpose in placing him on administrative leave was to coerce him thereafter to abandon his Fifth Amendment rights. There is no evidence of this--and Deputy Superintendent Dowd denied it in his deposition--but to avoid a possible disputed issue of fact, see Diaz, 112 F.3d at 3, we will assume arguendo that the defendants would have been pleased if, after being placed on administrative leave, Dwan had then cooperated fully with the Department and the grand jury and was able to identify those who had beaten Cox.

Yet we have just held that the defendants had an objectively reasonable basis for placing Dwan on leave without pay pending investigation, even though this stemmed in part from his refusal to testify; and we have likewise concluded that the limited burden on his Fifth Amendment rights--if it can be regarded as touching upon those rights--was permissible. This being so, it hardly matters whether the defendants hoped that Dwan might in due course decide to cooperate--whether to avoid the investigation, regain active status or for any other reason.

-13-

Of course we can imagine a case in which a public employer had an unsuspicious reason for placing an employee on administrative leave pending an investigation, but later facts revealed that the employer was trying to coerce the employee into waiving his Fifth Amendment rights. The clearest example would be a situation in which the employee was told that he would be restored to active duty only if he waived his rights. Alternatively, the facts could be so egregious that coercion could be reasonably inferred. Dwan, however, falls far short of such a showing.

About the only event furnishing any basis for suspicion is the scheduling and cancellation of Dwan's hearings; but, given the general lack of cooperation from those on the scene at the Cox beating, it is unsurprising that the Department had difficulty establishing definitive proof of a violation. Dwan does not allege that anyone so much as hinted that he would be restored to duty if, but only if, he waived the privilege. And, in the end, it was only the second polygraph test (both tests may have been administered under the auspices of Dwan's counsel) that persuaded the Department to abandon its investigation of Dwan.

Dwan finally alleges that the Department--although having restored him to active duty--is now refusing to transfer him to another division or to let him work special assignments. The district court did not advert to this claim and the record is thin. So far as we can tell from a few hints, the Department may be

refusing overtime and transfers to a <u>group</u> of officers present at the Cox beating of whom it remains suspicious. In other words, they are on duty with work and pay but getting no Departmental favors or extra details.

This situation presents no obvious Fifth Amendment claim. Dwan's testimony is not being sought (the Cox beating is eight years old) and if Dwan's prior refusals to testify are one of the reasons for continuing suspicion of him, we have already noted that negative inferences--outside of criminal prosecutions--are not automatically forbidden under the Fifth Amendment. Whether under civil service regulations or police union contracts he can be so restricted based merely on suspicion is not an issue before us.

Because the individual defendants did not violate Dwan's Fifth Amendment rights, the first prong of the <u>Saucier</u> inquiry is decisive in their favor. And, as to the second prong, a violation of the Fifth Amendment <u>in these circumstances</u> is not "clearly established" or readily apparent. Whether a Fifth Amendment right exists in the "abstract"--as it obviously does--is not the question. <u>Anderson</u> v. <u>Creighton</u>, 483 U.S. 635, 639-40 (1987). Thus, there is qualified immunity here even if we are wrong in finding that Dwan's constitutional rights were not violated.

Dwan finally claims injury under the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11I (2000), which prohibits interference or attempted interference with the exercise of rights

-15-

under federal or state law.  This claim is dependent on Dwan's Fifth Amendment claim (because the state law protects people from interference with the exercise of their federal rights, see Sena v. Massachusetts, 629 N.E.2d 250, 262 (Mass. 1994)), and therefore this claim fails as well--a loose end that we can resolve on this appeal. See Suboh, 298 F.3d at 97.

The judgment of the district court is vacated and the matter remanded for proceedings consistent with this decision.

It is so ordered.