# United States Court of Appeals
## For the First Circuit

No. 02-2214

CARLOS LUNA,

Petitioner, Appellant,

v.

COMMONWEALTH OF MASSACHUSETTS,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Boudin, Chief Judge,

Cyr, Senior Circuit Judge,

and Lynch, Circuit Judge.

Willie J. Davis with whom Davis, Robinson & White, LLP was on brief for petitioner.
Dean A. Mazzone, Assistant Attorney General, Criminal Bureau, with whom Thomas F. Reilly, Attorney General, was on brief for respondent.

January 9, 2004

**BOUDIN**, **Chief Judge**. Carlos Luna appeals from the district court's denial of his petition for a writ of habeas corpus. Luna, a former Boston police officer, was convicted of perjury and filing false reports. The background events are complicated, see Commonwealth v. Lewin, 542 N.E.2d 275, 276-83 (Mass. 1989), but an abbreviated version suffices for the issues raised on this appeal.

In February 1988 Luna applied for a search warrant for a Dorchester apartment, claiming in an affidavit attached to the application that a confidential informant had told him that a short Hispanic male had been distributing cocaine from the premises. Luna also claimed that he had purchased cocaine at the apartment from a Hispanic male on February 15 and 16, 1988. In the ensuing raid, a police officer named Sherman Griffiths was shot by someone inside the apartment. Albert Lewin, a tall black man, was arrested and charged with Griffiths' murder.

Luna's search warrant affidavit was materially false. The drug purchases on February 15 and 16, 1988, had been made respectively by two other confidential informants--not by Luna and not in his presence. Further, the informant who had initially tipped off the police to the drug activity at the apartment had not reported to Luna, as Luna had claimed in the affidavit, but had instead reported to another officer who then passed the information along to Luna. Finally, Luna had also said in the search warrant

-2-

affidavit that he had witnessed unusual foot traffic going to the apartment and had witnessed other transactions there, but these statements were untrue.

Nevertheless, at a probable cause hearing following Lewin's arrest, Luna testified in accordance with the lies in the search warrant affidavit. He also submitted police reports describing the February 15 and 16 drug purchases he had allegedly made. When a state court ordered Luna to reveal his supposed original informant, Luna made up a name and physical description; and when ordered to produce the informant, Luna and others engaged in a spurious search, in the course of which Luna filed further false reports.

In due course the indictment against Lewin was dismissed for failure to produce the informant, a potentially exculpatory witness. At the hearing prior to the dismissal, Luna had told additional lies consistent with his search warrant affidavit and his subsequent false identification of the informant. Then, through an anonymous tip, the prosecutor learned the name of the informant who had in fact made the February 15 drug purchase and asked for reinstatement of the indictment. The state court asked the prosecutor to try to obtain affidavits from Luna and other officers.

During early March 1989, Luna met a number of times with Mark Sullivan, retained as Luna's private counsel at his union's

expense. On March 12, 1989, Luna executed an affidavit admitting inter alia that he had lied in the search warrant affidavit, that the information contained in the search warrant affidavit did not reflect his personal knowledge, but rather "the collective knowledge of the police squad members[,] and that he had substituted himself as the drug purchaser [in the search warrant affidavit] in order to protect the informants." Luna v. Massachusetts, 224 F. Supp. 2d 302, 306 (D. Mass. 2002). At the direction of Massachusetts' Supreme Judicial Court ("SJC"), Lewin's indictment was eventually reinstated, Commonwealth v. Lewin, 542 N.E.2d at 276-83, but Lewin was acquitted at trial.

Meanwhile, Luna was indicted in state court on charges of perjury and filing false reports and was convicted in June 1991 on multiple counts of each offense. He was sentenced to five years' probation, conditioned on his resigning from the police force. A motion for a new trial was denied, and the SJC affirmed Luna's conviction. Commonwealth v. Luna, 641 N.E.2d 1050 (Mass. 1994). Then, in 1996 Luna brought the present habeas action which failed in the district court, Luna v. Massachusetts, 224 F. Supp. at 302, and he now appeals raising two different claims.[1]

---

[1]Although Luna's probation has expired, the habeas action was filed before this occurred. See 28 U.S.C. §§ 2241(c), 2254(b) (2000) (only people "in custody" may file a federal habeas petition); Spencer v. Kemna, 523 U.S. 1, 7 (1998) (statutory requirement is satisfied so long as the petitioner is in custody at the time the petition is filed); Jackson v. Coalter, 337 F.3d 74, 78-79 (1st Cir. 2003) (probation counts as "custody" for purposes

-4-

The first claim is that Luna's second affidavit, admitting to the falsity of his original affidavit, was a coerced confession improperly admitted at his trial for perjury and false reporting. Luna suggests that he was ordered to file the affidavit by the judge in the Lewin case; and, with greater vigor, Luna asserts that his own counsel put psychological pressure on him to file the affidavit, saying (for example) that otherwise the dead officer's family would blame him for thwarting the prosecution of Lewin.

Whether the confession was inadmissible under Massachusetts law was the subject of dispute at trial and on review in the SJC. Massachusetts law is friendly to such claims in a number of respects: it puts the burden on the Commonwealth to prove voluntariness beyond a reasonable doubt, allows the defendant two bites at the apple by giving the issue separately to the trial judge and the jury, and treats as coercion pressure exerted by private parties as well as by official action. Commonwealth v. Allen, 480 N.E.2d 630, 636-37 (Mass. 1985); Commonwealth v. Tavares, 430 N.E.2d 1198, 1204-05 (Mass. 1982), cert. denied sub

---

of federal habeas). Mootness is avoided because a presumption exists that a habeas petitioner continues to suffer the ill effects of a wrongful conviction even after his sentence is served. See Spencer, 523 U.S. at 7-14. Habeas denials can be appealed only by permission, 28 U.S.C. § 2253(c) (2000); Fed. R. App. P. 22(b)(1), but the district court granted a certificate of appealability on the two grounds now before us.

nom, 457 U.S. 1137 (1982).  Compare, e.g., Lego v. Twomey, 404 U.S. 477, 489 (1972).

In the state case against Luna, the trial judge refused to suppress the second affidavit, the jury may or may not have considered it after making its own judgment about undue pressure, and the SJC ruled that there was no legal error.  Commonwealth v. Luna, 641 N.E.2d at 1052 n.1.  In the district court (and on this appeal), there has been much discussion about the deferential standards of review applied in federal habeas to, respectively, state court findings of fact and legal rulings, 28 U.S.C. § 2254(d)-(e) (2000), but in this case the degree of deference makes no difference to the result.

The state court judge said he wanted an affidavit from Luna but made clear that he understood that Luna could invoke his privilege against self-incrimination; thus, the judge did not require Luna to file the affidavit.  Whether Luna's own counsel properly advised him about the privilege, or told Luna that others would be unhappy if he thwarted the Lewin prosecution, is irrelevant: under federal law, only coercion resulting from official action--court orders, police pressure, state law-- invalidates a confession.  Colorado v. Connelly, 479 U.S. 157, 164-66 (1986); United States v. Byram, 145 F.3d 405, 407 (1st Cir. 1998).

Luna's private attorney was not acting as a governmental official, nor (so far as the evidence shows) at the behest of officials, when he counseled Luna. Apparently Sullivan had earlier worked in the prosecutor's office and his wife still worked there; but neither circumstance made Sullivan a state actor at the time he advised Luna.[2] Massachusetts was free to exclude the affidavit on grounds of private coercion, but, whether or not it properly applied its own law, admitting the affidavit did not violate the federal constitution. The fact that Sullivan was not a state actor also disposes of Luna's contention that he did not voluntarily waive his Fifth Amendment right to avoid self-incrimination--a waiver of a defendant's Fifth Amendment rights is only involuntary if it resulted from official coercion. Connelly, 479 U.S. at 170.

Luna says that the admission of the confession was contrary to Garrity v. New Jersey, 385 U.S. 493 (1967). It was not. In Garrity, the statements were given under compulsion of a state law penalizing by dismissal a police officer who refused to answer questions about his official duties. Id. at 494. The case law has tended to construe Garrity narrowly,[3] but it is wholly

---

[2]Sullivan's wife apparently attended two of Luna's meetings with Sullivan; in addition, it was she who typed up the affidavit in which Luna admitted that he had lied. However, Luna does not assert that Sullivan's wife put any pressure on him whatsoever to file the affidavit.

[3]See Dwan v. City of Boston, 329 F.3d 275, 279-80 (1st Cir. 2003); United States v. Stein, 233 F.3d 6, 16-17 (1st Cir. 2000), cert. denied, 532 U.S. 943 (2001); Wiley v. Mayor of Balt., 48 F.3d

-7-

irrelevant here: the state law penalty in Garrity was the quintessence of state action. In this case the whole point is that there was no official compulsion.

Luna's second claim of error on this appeal relates to his own testimony at his trial. At trial Luna's affidavit was admitted by the judge as voluntary but subject to the caveat (required under state law) that the jury should disregard the affidavit if the jury itself found the statement involuntary (again, under the defendant-friendly state law standard). During its deliberations, the jury asked whether if it did find the confession involuntary, it could still consider Luna's trial testimony about the affidavit--some of which had been inculpatory.

Over Luna's objection, the trial judge told the jury that it could still consider his trial testimony. On appeal in this court, Luna says that this was constitutional error, citing Harrison v. United States, 392 U.S. 219 (1968). There, the Supreme Court held that where a confession obtained in violation of federal standards was introduced at trial and the defendant testified only to respond to that evidence, the defendant's incriminatory testimony was the fruit of the illegal confession and could not be used to salvage the conviction. Id. at 220-223.

The premise of Harrison was that the original confession (actually several confessions, 392 U.S. at 220) had been wrongfully

_____

773, 776-77 (4th Cir. 1995), cert. denied, 516 U.S. 824 (1995).

obtained under federal law.  <u>Id.</u> at 222-23.  Here, Luna's affidavit was not obtained in violation of federal law for reasons explained earlier.  Whether or not the jury disregarded the Luna affidavit under Massachusetts law does not matter.  To secure relief through federal habeas proceedings, there must be a violation of federal law, 28 U.S.C. § 2254(a) (2000), and here there was none.

<u>Affirmed.</u>