United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 26, 2007**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 05-51309

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROLANDO RICO TREVINO,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
(5:04-cr-00255-XR-ALL)

Before REAVLEY, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Rolando Trevino challenges the district court's ruling on the admissibility of a statement he

made to investigators following a conversation with his superior. For the following reasons, we

affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND

Trevino was formerly an officer with the Balcones Heights Police Department in Texas. On

November 24, 2002, he along with another officer, Dwaun Guidry, received a call regarding five

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIR. R. 47.5.4.

women at a service station who appeared to be intoxicated. After questioning them and noticing signs of intoxication, the officers handcuffed and escorted the women to police headquarters.

In January 2003, Balcones Heights Police Chief Kenneth Menn was informed by city attorneys that five young women were filing a lawsuit concerning the alleged sexual misconduct of two of his officers. The Balcones Heights City Attorney advised Chief Menn to cooperate with the ongoing state investigation. State investigators asked Chief Menn to call Trevino to the Balcones Heights police station for questioning. Chief Menn then had the Assistant Police Chief call Trevino, who was off duty, and request that he report immediately to the station. When Trevino arrived, Chief Menn personally escorted him to the room where Skylor Hearn, a Texas Ranger, was waiting and stated: "[t]his man needs to talk to you." Trevino entered the room and Hearn began questioning him about the events of November 24, 2002. Trevino initially denied remembering what happened, but after persistent questioning and being confronted with a photograph he allegedly took, he admitted to having oral sex with one of the women, allowing one to rub his pants, and taking lewd photographs of Guidry with another. Trevino insisted that all sexual contact was consensual and initiated by the women. After Trevino gave his statement, the state investigator read him his *Miranda* rights. Trevino then left without signing the statement. After seeing the statement, Chief Menn fired Trevino. Trevino was indicted for conspiring to violate the rights of the women. *See* 18 U.S.C. § 241.

At trial, Trevino moved to suppress his statement to Hearn under *Garrity v. New Jersey*, 385 U.S. 493 (1967), which holds that statements elicited as a result of a compelling choice between self-incrimination and loss of a public job are inadmissible. The district court ruled against Trevino, holding that the police department did not explicitly threaten him with loss of employment.

2

Trevino was convicted and sentenced to ten years in prison.

## II. STANDARD OF REVIEW

This court reviews de novo the district court's determination of whether Trevino's statement is voluntary under *Garrity*. *United States v. Santiago*, 410 F.3d 193, 202 (5th Cir. 2005). The factual and credibility findings of the district court are reviewed for clear error. *Id*.

## III. DISCUSSION

Trevino argues that his statement was coerced under threat of loss of employment. In *Garrity*, officers being questioned about charges of police corruption were warned before questioning "that if [they] refused to answer [they] would be subject to removal from office." *Garrity*, 385 U.S. at 494. The Supreme Court ruled that this practice was unconstitutional, holding that "the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under the threat of removal from office . . . ." *Id*. at 499.

In denying Trevino's motion to suppress, the district court relied on *United States v. Indorato*, 628 F.2d 711 (1st Cir. 1980), which states that "[i]n all of the cases flowing from *Garrity*, there are two common features: (1) the person being investigated is explicitly told that failure to waive his constitutional right against self-incrimination will result in his discharge from public employment . . . and (2) there is a statute or municipal ordinance mandating such procedure." *Id*. at 716. The district court concluded that the statement did not implicate *Garrity* because there was no explicit threat that Trevino would be fired if he refused to answer Hearn's questions and Chief Menn did not "instruct, tell, or intimidate [Trevino] in any way that he was required to answer Ranger Hearn's questions or that he would be fired or face dismissal."

3

The district court's reliance on *Indorato* in this regard was misplaced. Although *Indorato* did rely on the fact that *Garrity* dealt with an explicit threat of termination, neither *Indorato* or *Garrity* rules out the possibility that implied threats could violate a defendant's *Garrity* rights. Despite this, there was no error in admitting the statement. When viewed under the proper standard employed by other courts that have addressed the issue, the admission of the statement did not implicate Trevino's *Garrity* rights.

Although the Supreme Court has not recently revisited the *Garrity* line of cases, a number of the circuits have focused on the "coercion" issue emphasized by the Court in those cases, making it a claim dependent on such a showing. *See*, *e.g.*, *McKinley v. City of Mansfield*, 404 F.3d 418, 436 (6th Cir. 2005)*; United States v. Vangates*, 287 F.3d 1315, 1321-22 (11th Cir. 2002); *Chan v. Wodnicki*, 123 F.3d 1005, 1009-10 (7th Cir. 1997)*; Singer v. Maine*, 49 F.3d 837, 847 (1st Cir. 1995); *Benjamin v. City of Montgomery*, 785 F.2d 959, 961-62 (11th Cir.). The First Circuit has held that "coercion is lacking so long as the employee was never threatened or forewarned of any sanction for refusing to testify, even though the employee suffers adverse action after-the-fact as a result of refusing to cooperate." *Dwan v. City of Boston*, 329 F.3d 275, 279 (1st Cir. 2003) (quoting *Singer*, 49 F.3d at 847). The D.C. Circuit has held that an officer claiming the protection of *Garrity* "'must have in fact believed [his] statements to be compelled on threat of loss of job, and this belief must have been objectively reasonable.'" *McKinley*, 404 F.3d at 436 n.20 (quoting *United States v. Friedrick*, 842 F.2d 382, 395 (D.C. Cir. 1988)); *see also Vangates*, 287 F.3d at 1321-22. "In the absence of a direct threat, we determine whether the officer's statements were compelled by examining her belief and, more importantly, the objective circumstances surrounding it." *Vangates*, 287 F.3d at 1321-22.

4

Thus, to determine whether Trevino's *Garrity* rights were violated, we must look at the surrounding circumstances, specifically focusing on whether the questioning was coercive. Looking at the objective circumstances surrounding Trevino's questioning, it is clear that he was not faced with "'the Hobson's choice of either making an incriminating statement or being fired . . . .'" *Id*. at 1321 (quoting *United States v. Camacho*, 739 F.Supp. 1504, 1515 (S.D. Fla.. 1990)). Trevino's supervisors were not present during his questioning and never indicated to him that his job would be in any greater jeopardy if he failed to cooperate. Trevino gave an incriminating statement to Hearn only after being confronted with the photograph he allegedly took. Further, Trevino was told before questioning began that he was free to leave the interrogation room at any time. Thus, the district court did not err in admitting his statement, as the statement did not implicate Trevino's *Garrity* rights.

## IV. CONCLUSION

Accordingly, we AFFIRM the judgment of the district court.

AFFIRMED.