[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 23, 2012
JOHN LEY
CLERK

No. 11-13506
Non-Argument Calendar
_____

D.C. Docket No. 8:10-cr-00059-JSM-MAP-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GUY GANNAWAY,
STEPHEN J. SPENCER,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(May 23, 2012)

Before HULL, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

The Clean Air Act empowers the Environmental Protection Agency (EPA) to establish standards for the safe and proper handling and removal of asbestos during renovation work. 42 U.S.C. § 7412(h)(1). Companies involved in renovation work are subject to these standards. 40 C.F.R. §§ 61.141, 61.145. The failure to adhere to these standards can result in civil and criminal sanctions.

In 2004, Stephen Spencer and his partners purchased an apartment complex in Indian Shores, Florida, with the intent of turning the apartments into resort condominiums and reselling them at a profit. Spencer's group hired contractor Guy Gannaway and his company Gannaway Builders to renovate the apartments. The majority of the apartments contained regulated asbestos-containing material (RACM)[1] in the form of popcorn ceiling texture. The EPA's standards required Gannaway to survey for asbestos, notify the EPA of the intent to remove the RACM, remove all the RACM before any renovation work began, and have a trained supervisor on-site to oversee the project. Removal of the RACM involves wetting the asbestos materials and carefully lowering them to the floor before disposing of them. 40 C.F.R. § 61.145.

The EPA has also established disposal requirements detailing how to

---

[1] RACM is defined in 40 C.F.R. § 61.141 and includes friable asbestos material, which means material containing more than one percent asbestos that, when dry, can be crumbled or reduced to powder by hand pressure.

collect, package, and transport the removed asbestos materials, and requiring contractors to keep records of the disposal. *Id.* § 61.150. In Florida, the EPA has delegated its regulation and inspection powers to the Pinellas County Air Quality Division of the Department of Environmental Management.

Between 2004 and 2006, Gannaway and Spencer, along with two others, conspired to violated the Clean Air Act's RACM provisions by failing to properly remove the RACM during the renovations. Specifically, there was no asbestos survey prior to the renovations, Gannaway, at Spencer's direction, covered the popcorn ceiling with drywall, Gannaway disposed of asbestos waste material in on-site dumpsters, and Gannaway conducted all the removal and renovations without the presence of a trained on-site asbestos supervisor. When confronted with the violations by the EPA and the Pinellas County Air Quality Division, the conspirators made false statements about the project. Gannaway eventually admitted civil liability and paid a fine to cover the violations.

Gannaway and Spencer were later indicted for conspiracy to violate the Clean Air Act, in violation of 18 U.S.C. § 371 (Count 1); violating the Clean Air Act by: failing to properly remove the RACM (Count 2), conducting removal without an on-site supervisor (Counts 3 and 9), improperly disposing of the RACM (Count 7), and failing to remove the RACM (Count 8), all

3

under 42 U.S.C. § 7413.  Gannaway was also charged with failing to adequately wet the RACM during the renovations (Count 4), failing to carefully lower the RACM to the floor (Count 5), and failing to adequately seal and label the RACM (Count 6), in violation of § 7413, and making a false statement in a letter to the Pinellas County Air Quality Division (Count 11), in violation of 18 U.S.C. § 1001. The alleged false statement in Count 11 was a statement in a letter to the Air Quality Division that Gannaway Builders "took great care to handle the removal of and working around the asbestos in the popcorn ceiling."  Finally, Spencer and Gannaway were charged with making a false statement in a separate letter to Air Quality officials (Count 10), in violation of § 1001.

Following a jury trial, Gannaway was convicted of Counts 1 through 7 and 11,  and acquitted of the remaining counts.  Spencer was convicted of Counts 1 and 3, and acquitted of the remaining counts.  The court sentenced Gannaway to 3 months' imprisonment and 36 months' supervised release, and Spencer to 60 months' probation.

Gannaway makes three arguments on appeal:  (1) the admission of statements he made during settlement of civil liability violated the Fifth Amendment; (2) the proffer of his admission of civil liability failed the balancing test in Rule 403 of the Federal Rules of Evidence; and (3) the evidence was

4

insufficient to convict him of making a false statement. Spencer challenges only whether the evidence was sufficient to support his convictions. We will address each defendant in turn.

I. Gannaway's convictions

A. Fifth Amendment

During the renovation project, the Pinellas County Air Quality Division determined that Gannaway Builders was violating several standards for the handling of RACM. It issued a warning letter and a notice of violation to Gannaway Builders, and Gannaway ultimately admitted that he was civilly responsible. The same violations later formed the basis of the criminal charges. At the criminal trial, a witness from the Pinellas County Air Quality division testified that Gannaway Builders admitted civil liability for the RACM violations.

Gannaway argues that the government violated his Fifth Amendment privilege against self-incrimination by admitting his statements accepting civil liability for the RACM violations. He contends that the state compelled him to assume civil responsibility because, if he had not, the Air Quality Division would have economically sanctioned him by either fining him or shutting down the renovation.

Because Gannaway raises this issue for the first time on appeal, we review

for plain error.  *United States v. Crawford*, 906 F.2d 1531, 1533 (11th Cir. 1990).

To demonstrate plain error, Gannaway must show that there is  (1) error, (2) that is

plain, and (3) that affects substantial rights.  *United States v. Turner*, 474 F.3d

1265, 1276 (11th Cir. 2007).  If all three conditions are met, we may then exercise

our discretion to notice a forfeited error, but only if the error seriously affects the

fairness, integrity, or public reputation of judicial proceedings.  *Id.*  "Errors . . .

affect a substantial right of a party if they have a substantial influence on the

outcome of a case or leave grave doubt as to whether they affected the outcome of

a case."  *Id.* (internal quotation marks omitted).  There can be no plain error

"where the explicit language of a statute or rule does not specifically resolve an

issue," and "there is no precedent from the Supreme Court or this Court directly

resolving it."  *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir.

2003).

The Fifth Amendment provides that no person "shall be compelled in any

criminal case to be a witness against himself."  U.S. Const. amend. V.  The

amendment protects an individual from being called as a witness against himself

in a criminal prosecution, and also privileges a witness not to answer official

questions asked of him during any other proceeding if the answers may

incriminate him in future criminal proceedings.  *Minnesota v. Murphy*, 465 U.S.

420, 426 (1984).

The Fifth Amendment protection against self-incrimination is not self-executing. *United States v. Vangates*, 287 F.3d 1315, 1320 (11th Cir. 2002). Indeed, a witness's answers to government questions generally cannot be "compelled" within the meaning of the Fifth Amendment unless the witness invokes his Fifth Amendment right and the government nevertheless requires the witness to answer. *Id.*

An exception to this general rule arises when assertion of the Fifth Amendment privilege "is penalized so as to foreclose a free choice to remain silent or give incriminating testimony." *Id.* (internal quotation marks omitted). This may occur if the state compels an individual to appear and testify and also threatens to impose economic or other sanctions "capable of forcing the self-incrimination which the Amendment forbids" if the individual does not forgo his Fifth Amendment rights. *Murphy*, 465 U.S. at 434 (quotation omitted). Where an individual succumbs to this pressure and fails to assert the privilege, any information the individual gives the state is still protected by the Fifth Amendment. *Id.* at 434-35.

Further, because the "touchstone of the Fifth Amendment is compulsion," the use of both direct and indirect economic sanctions used to compel testimony

are violative of the Fifth Amendment. *Lefkowitz v. Cunningham*, 431 U.S. 801, 806 (1977); *see also Vangates*, 287 F.3d at 1321 (alteration and internal quotation marks omitted). For a witness's statements to be protected under the Fifth Amendment when the witness has not invoked the privilege, the witness must show (1) that he subjectively believed that he was compelled to give a statement upon a threat, and (2) that his belief was objectively reasonable at the time the statement was made. *Id.* at 1322. In making this determination, we examine the totality of the circumstances surrounding the testimony. *Id.*

Here, the state did not directly threaten to penalize Gannaway if he invoked his Fifth Amendment right. The evidence showed that the Air Quality Division notified Gannaway and the owners of the violations. The Air Quality Division did not target Gannaway specifically, and it would have settled with either party, allowing the parties involved to decide who would take responsibility. Moreover, the Air Quality Division had no authority to shut down the renovations without judicial involvement. In light of this evidence, Gannaway cannot show that his subjective belief that he was compelled to make the statements was objectively reasonable. Thus, Gannaway has not shown that plain error occurred.

B. Rule 403

Gannaway argues that the admission of his statements of civil liability were

more prejudicial than probative under Rule 403 because this evidence likely caused the jury to find that he was criminally liable for those same acts.[2]

Ordinarily, a district court's preserved evidentiary rulings are reviewed for abuse of discretion. *United States v. Gamory*, 635 F.3d 480, 492 (11th Cir.), *cert. denied*, 132 S.Ct. 826 (2011). But when a defendant fails to preserve an evidentiary ruling by contemporaneously objecting, we only review for plain error. *Id.*

Under Rule 408, statements made during compromise negotiations about a claim are ordinarily inadmissible "except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority." Fed. R. Evid. 408(a)(2). The admission of evidence under Rule 408 is subject to the balancing test in Rule 403, and the district court may exclude relevant evidence if its "probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. In evaluating a district court's ruling under Rule 403, we view the evidence in the light most favorable to admission, maximizing its probative value and minimizing

---

[2] Gannaway also argues that the evidence was inadmissible under *Old Chief v. United States*, 519 U.S. 172 (1997), and Rule 404(b). Neither of these rules entitle Gannaway to relief. First, *Old Chief* does not apply to this case because Gannaway did not offer to stipulate to anything at trial. 519 U.S. at 186-87. Further, Rule 404(b) does not apply because the challenged evidence was intrinsic to the offenses charged in the indictment, as opposed to extrinsic. *United States v. Saintil*, 753 F.2d 984, 987 (11th Cir. 1985).

its undue prejudicial impact. *United States v. Bradberry*, 466 F.3d 1249, 1253 (11th Cir. 2006).

Here, there was no error in the court's admission of Gannaway's statements that he would accept responsibility for the civil violations. Gannaway's admissions were relevant to proving various counts of the indictment, including the conspiracy charge. Although this evidence was also likely prejudicial, when the evidence is viewed in the light most favorable to its admission, the evidence's probative value was not substantially outweighed by this prejudice. Accordingly, no plain error occurred in this respect.

### C. Sufficiency of the evidence

Gannaway argues that the evidence at trial was insufficient to establish that he made a false statement under § 1001. At issue was the statement that Gannaway Builders "took great care to handle the removal of and working around the asbestos in the popcorn ceilings." He contends that the statement was vague but not "false," and that the evidence at trial did not establish that he made the statement in a transaction over which a federal agency had the power to exercise its authority.

We generally review both a challenge to the sufficiency of the evidence and the denial of a motion for judgment of acquittal *de novo*. *Gamory*, 635 F.3d at

10

497.  But where, as here, the defendant moved for judgment of acquittal but did not raise the specific ground to the district court,[3] review of the district court's decision to deny the motion is only for plain error.  *United States v. Hunerlach*, 197 F.3d 1059, 1068 (11th Cir. 1999).

It is unlawful to knowingly make a materially false statement or representation to a government agency in a matter within its jurisdiction.  18 U.S.C. § 1001; *United States v. Boffil-Rivera*, 607 F.3d 736, 740 (11th Cir. 2010).  To sustain a conviction against a defendant for a violation of § 1001, the government must prove that:  (1) the defendant made a statement; (2) the statement was false; (3) the statement was material; (4) the statement was made with specific intent; and (5) the statement was made in a matter within the jurisdiction of a federal government agency.  *Boffil-Rivera*, 607 F.3d at 740.

"Falsity under section 1001 can be established by a false representation or by the concealment of a material fact."  *United States v. Calhoon*, 97 F.3d 518, 524 (11th Cir. 1996).  Falsity through concealment exists where disclosure of the

---

[3]  To preserve an issue for appeal in a judgment of acquittal, "one must raise an objection that is sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought."  *United States v. Straub*, 508 F.3d 1003, 1011 (11th Cir. 2007) (internal quotation marks omitted).  The objection must be raised "in such clear and simple language that the trial court may not misunderstand it."  *Id.* (internal quotation marks omitted).

concealed information is required by a statute, government regulation, or form. *Id.* at 526.

The government must also prove that the false statement was made in a matter within the jurisdiction of a federal government agency. *Boffil-Rivera*, 607 F.3d at 740; 18 U.S.C. § 1001. For the purposes of § 1001, the term "jurisdiction" is construed broadly. *United States v. Rodgers*, 466 U.S. 475, 479 (1984). The government is not required to prove that the false statement was made with actual knowledge of federal agency jurisdiction. *United States v. Yermian*, 468 U.S. 63, 69-70 (1984). Nevertheless, we have recognized that the term "jurisdiction" does have limits. *Blankenship*, 382 F.3d at 1136. The key inquiry is whether the agency could "exercise authority" over the particular situation in which the statement was made. *Id.* at 1136-38.

After review, we find no plain error in the district court's decision to deny Gannaway's motion for judgment of acquittal. Former Gannaway Builders Vice President James Edwards testified that when he learned of asbestos in the ceiling, he notified Gannaway, who ordered him to clean it up. Edwards explained that the crews then removed the asbestos by throwing it over the second-floor railing to a dumpster below. When the Pinnellas County Air Quality Division later questioned how the company handled the asbestos, Edwards submitted a letter

12

stating that the company "took great care." Edwards admitted that the statement was not true and that he wrote it at Gannaway's direction. He further testified that Gannaway reviewed the letter before Edwards submitted it to the Air Quality Division.

The evidence at trial also showed that prior to the removal of the RACM, Gannaway's consultant had tested the ceiling and found it contained at least ten percent asbestos, which was considered high. Gannaway did not report the removal of the asbestos to the Air Quality Division and did not provide his workers with any training prior to the removal.

Although Gannaway argues that the statement was ambiguous because there was some period of time that "great care" was arguably taken, and the asbestos problem related only to one building, we disagree. Based on the evidence, a reasonable jury could infer that Gannaway was aware that the statement in the letter was false and that, by assisting in preparing the letter and reviewing it, Gannaway furthered the offense and acted with the intent to aid in the commission of the offense. Further, a jury could find that the statement was false in light of evidence that showed that asbestos-containing materials were thrown over the railing into an open dumpster on the first floor, that none of the workers was trained to handle asbestos material, and no trained supervisor was present during

13

the removal. Because the relevant statutes required Gannaway to adhere to specific procedures for the handling and removal of the RACM, the jury could easily conclude that the statement at issue was made to conceal the true facts, thus satisfying the "falsity" element.

Moreover, the false statement was made in the context of the local enforcement agency's investigation into the asbestos violations that were listed in the notice of violations. The EPA was able to exercise power over the local agency's investigation because the EPA could bring its own civil or criminal enforcement action at any time. 42 U.S.C. § 7412(l)(1), (7). Because there is no controlling case that indicates this is insufficient to satisfy the jurisdiction element of § 1001, there can be no plain error.

II. Spencer's convictions

We review both a challenge to the sufficiency of the evidence and the denial of a Rule 29 motion for judgment of acquittal *de novo*. *Gamory*, 635 F.3d at 497. In considering the sufficiency of the evidence, we view the evidence in the light most favorable to the government, with all inferences and credibility choices made in the government's favor, and affirm the conviction if, based on this evidence, a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* It is not necessary that the evidence presented at trial exclude every reasonable

hypothesis of innocence or is wholly inconsistent with every conclusion except that of a defendant's guilt. *Id.* A jury's rendering of inconsistent verdicts is irrelevant to our sufficiency determination. *United States v. Veal*, 153 F.3d 1233, 1252-53 (11th Cir. 1998).

Spencer was convicted of conspiracy to violate the Clean Air Act and violating the act by failing to have a trained supervisor on site during the RACM removal. To show a conspiracy under 18 U.S.C. § 371, "the Government must prove the existence of an agreement to achieve an unlawful objective, the defendant's knowing and voluntary participation in the conspiracy, and the commission of an overt act in furtherance of it." *United States v. Campa*, 529 F.3d 980, 1001-02 (11th Cir. 2008) (internal quotation marks omitted). The agreement may be proved by either direct or circumstantial evidence, and a common object may be inferred from the conduct of the participants or from other circumstances. *United States v. Hansen*, 262 F.3d 1217, 1246 (11th Cir. 2001).

The government must also prove beyond a reasonable doubt that each defendant had a "deliberate, knowing, specific intent to join the conspiracy." *United States v. Adkinson*, 158 F.3d 1147, 1153 (11th Cir. 1998) (internal quotation marks omitted). The government does not have to prove that each conspirator participated in all aspects of the conspiracy, knew each phase or every

15

detail of the conspiracy, or knew all of the participants. *Hansen*, 262 F.3d at 1247. Rather, a conspirator may be convicted "if he participates in some affirmative conduct designed to aid the success of the venture with knowledge that his actions would further the venture." *Id.* (internal quotation marks and alteration omitted).

Under 18 U.S.C. § 2, an individual may be indicted as a principal for the commission of a substantive crime and convicted upon evidence that he only aided and abetted another in the commission of the offense. *United States v. Walser*, 3 F.3d 380, 387-88 (11th Cir. 1993). Our test is to determine whether there was an act by the defendant which contributed to and furthered the offense, and whether the defendant intended to aid its commission. *Id.* at 388.

We have long recognized that the knowledge element of a criminal statute can be proved by demonstrating either actual knowledge or deliberate ignorance. *United States v. Hristov*, 466 F.3d 949, 952 (11th Cir. 2006). A party is deemed to have deliberate ignorance where his suspicion is aroused, but he then deliberately decides not to inquire further because he wishes to remain ignorant. Thus, to act knowingly "is not necessarily to act only with positive knowledge, but also to act with an awareness of the high probability of the existence of the fact in question." *Id.* at 952-53 (quotation omitted).

The EPA and the Pinnellas County Air Quality Division, through the

16

standards contained in 40 C.F.R. § 61.145(c), regulate in minute detail the handling of asbestos in building renovation sites. *United States v. Ho*, 311 F.3d 589, 595 (5th Cir. 2002). One such regulation requires a foreman or management-level officer, trained in complying with these standards, to be present at any site before workers may handle or disturb any material containing asbestos. *Id.*

The evidence at trial showed that, after Spencer discovered that the apartments contained asbestos, he decided that the ceilings should be encapsulated, which involved attaching drywall directly to the ceilings by way of screws. Spencer elected this method because it was less expensive than removal. Inspectors with the Air Quality Division testified to the manner in which asbestos is encapsulated and opined that it could not be done without disturbing the asbestos in the ceiling. In light of the testimony presented, a reasonable jury could have found that Spencer knew, or should have known, that encapsulation would disturb asbestos, such that a trained on-site supervisor had to be present during the process. *See* 40 C.F.R. § 61.145(c)(8).

Further, a reasonable jury could also find that Spencer and Gannaway agreed to encapsulate the ceilings without the presence of an on-site supervisor trained in handling RACM, that Spencer knowingly and voluntarily participated in

17

that agreement, and that he acted in furtherance of the conspiracy by researching the encapsulation method and determining the details of encapsulation. Further, because there is evidence that Gannaway's workers actually performed the encapsulation process without the presence of an on-site supervisor , the evidence is also sufficient to support Spencer's conviction for the substantive offense under an aiding and abetting theory. *Walser*, 3 F.3d at 387-88.

III. Conclusion

Based on the forgoing, we AFFIRM Gannaway's and Spencer's convictions.

**AFFIRMED.**